IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) CRIM NO. 25-CR-318 |
| KEONTE WILSON, | ) |
| | ) |
| Defendant. | ) |

**KEONTE WILSON'S MOTION
TO SUPPRESS EVIDENCE AND STATEMENTS**

COMES NOW Keonte Wilson, through undersigned counsel, and moves to suppress evidence and statements obtained from him on August 28, 2025 . As reasons therefor, defendant Keonte Wilson states as follows:

**FACTS**

On August 28, 2025, at approximately 9:00 pm, Mr. Wilson was allegedly congregating with other individuals on a sidewalk in the area of the 1400 block of V Street, NW. At that time, MPD officers arrived in an unmarked vehicle, but wearing police gear, and exited the vehicle. Though officers claim this was a high crime area, the officers did not observe any of the individuals committing any crime violations, nor does it appear that there was a call for service in the area. According to police reports, upon officers arriving, Mr. Wilson "became wide-

1

eyed upon seeing the officers and began to look around. [Mr. Wilson] appeared to be looking for an avenue of escape."

As an MPD officer then approached Mr. Wilson, who appears on body-worn camera to not be moving and is standing approximately three feet in front of a female.[1] As the officer approached, the officer asked if Mr. Wilson had anything on him. Mr. Wilson replied "no." The officer replied, "Nah?" Mr. Wilson once again said "No." The officer again asked, "Nothing?" Mr. Wilson said, "No, what's wrong?" The MPD Office stated, "I'm saying, we popped up." The officer then asked if he had anything in his backpack. Mr. Wilson stated, "my laptop," opened the backpack, and showed it to the officer. The officer, while pointing his flashlight to Mr. Wilson's left pocket then asked, "nothing in there?" Mr. Wilson then showed the contents of his left pockets, which had a wallet and a ski mask, as well as his right pocket, which had his keys. The officer then asked about Mr. Wilson's waist area, at which point, Mr. Wilson took out his phone, which was around his waist area in his jacket pocket. Mr. Wilson then said, "No there is nothing in my waist." The officer then replied, "Let me see. I am going to pat you real quick." The MPD officer then began patting Mr. Wilson in his groin area

---

1 The entire exchange if seen and heard on the body worn camera (BWC) – which will be described below – was provided by the government in a BWC video entitled "CPWL-1400_V_ST-_NW_2.mp4."

without having received consent from Mr. Wilson. The officer then allegedly felt an object he believed to be a firearm. At that point, a weapon was recovered from Mr. Wilson's person. He was then arrested.

## ARGUMENT

The Fourth Amendment protects citizens "against unreasonable searches and seizures." U.S. Const. Amend. IV. A Fourth Amendment seizure occurs "when physical force is used to restrain movement or when a person submits to an officer's show of authority." *United States v. Brodie,* 742 F.3d 1058, 1061 (D.C. Cir. 2014) (internal quotation marks omitted). An officer may approach an individual on the street to ask him questions however, such questioning becomes a Fourth Amendment seizure where "the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (internal quotation marks omitted); *United States v. Castle*, 825 F.3d 625, 632 (D.C. Cir. 2016) (citations omitted). The totality of circumstances is considered when evaluating whether and when a "reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed. 2d 497 (1980).

Probable cause is necessary to effectuate an arrest at which point a search is

lawful. *Smith v. United States*, 254 F.2d 751 (D.C. Cir. 1958). Law enforcement may "seize" a person on less than probable cause if the officer has "a reasonable, articulable suspicion that 'criminal activity may be afoot.'" *Terry v. Ohio*, 392 U.S. 1, 21, 30, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968); *United States v. Edmonds*, 240 F.3d 55, 59, (D.C. Cir. 2001). Courts are instructed to view the "totality of the circumstances" when making a reasonable suspicion determination. *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

1. **<u>Seizure</u>**

The D.C. Circuit has outlined several factors to consider in assessing whether a seizure occurred to include " whether the suspect was physically intimidated or touched, whether the officer displayed a weapon, wore a uniform, or restricted the defendants movements, the time and place of the encounter, and whether the officer's use of language or tone of voice indicated that compliance with the officer's request might be compelled." *Castle*, supra at 632-33 (quotations omitted). Considering these factors, Mr. Wilson was seized prior to being searched.

The seizure occurred here when law enforcement approached Mr. Wilson and began asking questions of him with one officer on each side of him. One officer came to his left side, and the second officer came to his right side. As there

was the female in front of him, and a fence a few feet behind him, Mr. Wilson was essentially unable to leave the area freely. Restriction of movement by law enforcement is enough to communicate to a reasonable person that he was not at liberty to leave. In *United States v. Carter*, No. 20-05 (JDB), 2020 U.S. Dist. Lexis 121181 *10-11 (D.D.C. July 10, 2020), the court found that the officers blocking of the defendant's path conveyed he was not free to leave and was a seizure. In *United States v. Wood*, 981 F.2d 536, 540 (D.C. Cir. 1992), likewise, the Circuit found a seizure where the officer positioned directly behind the defendant significantly restricting his movements. Submission to the seizure occurred by Mr. Wilson as he followed their orders, taking out items from his backpack and his person to show he did not have anything on him. "A defendant does not have to remain frozen in order to submit." *United States v. Delaney*, 955 F.3d 1077, 1085 (D.C. Cir. 2020), (finding Delaney submitted by neither ignoring express orders nor making any furtive gestures by staying inside the vehicle and not getting out and running away). Likewise, Mr. Wilson did not run from law enforcement when they blocked his path and moved in on him.

2. **No Articulable Suspicion**

The Government bears the burden of establishing the reasonableness of any search it performs in the absence of a search warrant. *Rouse v. United States*, 359

F.2d 1014, 1016 (D.C. Cir. 1966). To justify such intrusive conduct "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, supra at 21. The search conducted here was pursuant to an illegal *Terry* frisk. A valid *Terry* frisk requires a finding that adequate reasons for suspecting criminal activity were established before the frisk, and that the frisk was in response to a reasonable apprehension of danger to the officers. *Id*. at 30. These predicates were not satisfied here.

At the time of his seizure, law enforcement did not have "specific and articulable facts" to support a reasonable and articulable suspicion that Mr. Wilson was engaged in criminal activity. Firstly, that the area was considered to be a high call area of firearm usage, does "not provide objectively useful context in determining whether the police had reasonable, articulable suspicion."[2]  Our Circuit has made clear that "the character" of the neighborhood is only a valid consideration "when coupled with other reliable indicia or suspicious circumstances." *United States v. Davis*, 458 F.2d 819, 822 (D.C. Cir. 1972); see also *Brown v. Tex*., 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (no

---

2  *D.W. v. United States*, 339 A.3d 175 (D.C. 2025),(quotations omitted), citing to *Mayo v. United States*, 315 A.3d 606 (D.C. 2024)(en banc).

reasonable suspicion to stop person based solely on presence in neighborhood known for drug activity).

Further, contrary to law enforcement accounts, the body worn camera recording does not support a finding that Mr. Wilson sought to walk away from law enforcement when he initially saw them. But even if it did, our Circuit has found that walking quickly away upon arrival of uniformed police was insufficient to provide reasonable suspicion of criminal activity afoot. *United States v. Jones*, 584 F.3d 1083, 1087 (D.C. Cir. 2009). Further, even if Mr. Wilson looked around to see where law enforcement officers were, that does not go towards reasonable suspicion either. General curiosity about police action is not sufficient for reasonable suspicion. *United States v. Brow*n, 334 F.3d 1161, 1167 (D.C. Cir. 2003). His choice of clothing added nothing either.

Yet law enforcement still chose to approach Mr. Wilson. At least two police officers walked towards him at the same time from different angles. One to his left side, who began asking questions, and one from his right side, seconds later. The officer to his left side initiated the contact. There was scant reason for even an investigative interview at this junction, let alone reasonable suspicion. The answers law enforcement received in response to the questions posed to Mr. Wilson during their investigator interview, did not fuel "reasonable suspicion" either. Mr. Wilson

easily answered the questions as to whether he had anything on him, by pulling out items on his person that were not illegal. He denied possessing a weapon. But rather than back off, law enforcement put their hands on Mr. Wilson and then searched him.

Even assuming officers observed a bulge in his pants, there were no reports of a person walking around with a firearm in their pants at that particular location in the city. "Without preliminary indicia of criminal activity, a nondescript bulge does not fuel suspicion of dangerousness."  *United States v. Malachi,* 728 F. Supp. 777, 782 (D.C. 1989). Hence, none of this supported the search that occurred here. To conduct a *Terry* frisk for weapons, an officer needs to have reasonable suspicion that the person is armed and presently dangerous. *Ybarra v. Illinois*, 444 U.S. 85, 92-93 100 S.Ct. 338, 62 L.Ed.2d 238 (1979).

Law enforcement cannot act on "inchoate, and unparticularized suspicion or 'hunch[es]'."  *Terry*, supra at 49-50; *Ybarra*, supra at 92-93; *United States v. Holmes*, 360 F.3d 1339, 1342 (D.C. Cir. 2004). But here that is all we have, hunches.

As to any statements, Mr. Wilson at no time prior to being questioned by the officers was he read his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436. Accordingly, any questions after the court determines Mr. Wilson was in

"custodial interrogation" should be suppressed. As discussed above, the defense submits that Mr. Wilson was in custody at the time both officers approached and essentially surrounded him. Accordingly, the court should suppress all statements past that illegal seizure, pursuant to *Miranda* and *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

## Conclusion

As Mr. Wilson was seized by officers without probable cause or reasonable suspicion in violation of the Fourth Amendment. Thus, evidence and statements obtained as the "fruit" of that search and seizure must be suppressed. *United States v. Sheffield*, 799 F.Supp. 2d 22, 28 (D.D.C. 2011) (citing *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

WHEREFORE, for the following reasons, for such other reasons as this Court may determine at a hearing on this motion, Ms. Wilson respectfully requests that this motion be granted and that the Court suppress the use of evidence and statements of all items seized on August 28, 2025.

Respectfully submitted,

KEONTE WILSON
By Counsel

   /s/ John L. Machado
John L. Machado, Esq.
Bar No. 449961
Counsel for Keonte Wilson
503 D Street, N.W., Suite 310
Washington, DC 20001
Telephone: (703) 989-0840
E-mail: johnlmachado@gmail.com

## Certificate of Service

I hereby certify that a true copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system this 31st day of December, 2025, which will send a notification of such filing (NEF) to the following to all counsel of record.

   /s/John L. Machado
John L. Machado, Esq.
Bar Number 449961
Attorney for Keonte Wilson
Law Office of John Machado
503 D Street NW, Suite 310
Washington, D.C. 20001
Telephone (703)989-0840
Email: johnlmachado@gmail.com